UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60116-CR-RNS

UNITED STATES OF AMERICA,

vs.

VAN LAWSON WILLIAMS,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS INDICTMENT

THIS MATTER is before the Court on the Motion to Dismiss Indictment (ECF No. 43), filed by Defendant Van Lawson Williams. For the reasons set forth below, this Motion is denied.

## Introduction

Defendant is charged with engaging in sex trafficking of minor girls in violation of 18 U.S.C. § 1591.[1] Defendant was allegedly prostituting young girls, ranging from 12 to 16 years in age, at his Fort Lauderdale, Florida residence. He seeks to dismiss the Indictment because the statute is unconstitutional. He also contends that "there exists no evidence of any interstate activity factually," and mere "cell phone use is an inadequate basis" to establish the required interstate nexus. Mot. at 3-5. Below, the Court addresses, and rejects, each of these arguments in turn.

## Legal Standards

A motion to dismiss an indictment is governed Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on a variety of grounds, including for failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d

---

[1] The statute imposes punishment on anyone who knowingly "in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, or obtains by any means a person" while "knowing, or in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a)(1). The statute also provides that if "the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided obtained or maintained, the Government need not prove that the defendant knew the person had not attained the age of 18 years." 18 U.S.C. § 1591(c).

1316, 1325 (11th Cir. 2012); *see also United States v. Suescun*, 237 F.3d 1284, 1288 (11th Cir. 2001). "[A]n indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

"There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). "The sufficiency of a criminal indictment is determined from its face." *Id.* The indictment passes muster "if it charges in the language of the statute." *Id.* "Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985).

## Legal Analysis

Defendant levels several constitutional attacks on the statute under which he is charged, 18 U.S.C. § 1591. Specifically, he contends that the statute violates the Fifth and Sixth Amendments to the Constitution. The Court rejects each and every one of these arguments, for the reasons cogently stated by Judge Rosenbaum in *United States v. Wilson*, 2010 WL 2991561, *6-*12 (S.D. Fla. July 27, 2010).[2] To repeat or expound upon that well-reasoned order here would serve no useful purpose.[3] Suffice it to say, Defendant's constitutional arguments do not warrant dismissal of the Indictment.

The Court likewise rejects Defendant's interstate commerce argument. According to Defendant, the Indictment is defective because there is insufficient evidence as to whether his actions were "in and affecting interstate or foreign commerce," as required by section 1591(a). Mot. at 3-5. He contends that "the use of the common day 'cell phone' is an inadequate basis for the establishment of a sufficient nexus to interstate [commerce] to justify federal jurisdiction."

---

[2] The district judge in *Wilson* subsequently approved, adopted, and ratified the order authored by Judge Rosenbaum, who was at the time a magistrate judge. *See United States v. Wilson*, 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010) (Zloch, J.) (adopting report and recommendation and denying defendant's motion to dismiss indictment).

[3] Resting on *Wilson* is especially befitting given that Defendant's counsel was also counsel for the *Wilson* defendant. Counsel should not have included in the instant Motion, the representation that "[n]o court anywhere in the country has as yet construed the newly-revised § 1591, or considered its constitutionality." Mot. at 8. After *Wilson*, that is clearly not the case.

*Id.* at 3. Defendant emphasizes that neither he nor anyone involved in this case travelled interstate, the internet was not used, credit cards were not used, and there was no solicitation through online chat rooms or the mails. *Id.* at 4-5.

Initially, the Court rejects these arguments as beyond the scope of a Rule 12(b) motion to dismiss. Defendant's argument is that "there exists no evidence" of interstate activity. Mot. at 3. On motion to dismiss an indictment, however, the Court may not wade into the sufficiency of the evidence or otherwise make factual assessments. *See Critzer*, 951 F.2d at 307. "The sufficiency of a criminal indictment is determined from its face." *Id.* And, on the face of this Indictment, the Court cannot say that it is infirm for lack of an interstate nexus. Indeed, the Indictment appears to track the language of the statute, *see id.* at 307-08, and it in fact charges that Defendant's criminal acts were "in and affecting interstate and foreign commerce." *See* Indict. at 1-2 (ECF No. 13).

In any event, these arguments are foreclosed by the Eleventh Circuit's decision in *United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007). In *Evans*, the court of appeals relied upon prior commerce clause authority to uphold the constitutionality of section 1591(a), as applied to a defendant's child prostitution activities occurring solely within Florida. *Id.* at 1179-80. The court found that given the illicit nature of the economic activity in question and Congress's stated desire to stamp it out, section 1591(a) constituted "part of a comprehensive regulatory scheme that could be frustrated by purely intrastate activity considered in the aggregate." *Id.* at 1179.

In so concluding, the court drew on its earlier decision in *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006), which concerned the prosecution of purely intrastate activity under the federal Child Pornography Prevention Act. In *Maxwell*, the defendant argued the statute was unconstitutional as applied to his intrastate possession of child pornography, as there was no evidence that his conduct would likely impact interstate commerce. *Id.* at 1217-19. The Eleventh Circuit disagreed, finding that the statute was part of a comprehensive regulatory scheme criminalizing the production, possession, and sale of child pornography. According to the court, Congress could have rationally concluded that the cumulative effect of local possession of child pornography would substantially affect the interstate commerce that it sought to eliminate. *Id.* As the court explained, it was not "irrational for Congress to conclude that its

inability to regulate the intrastate incidence of child pornography would undermine its broader regulatory scheme designed to eliminate the market in its entirety, or that 'the enforcement difficulties that attend distinguishing between [purely intrastate and interstate child pornography],' would frustrate Congress's interest in completely eliminating the interstate market." *Id.* at 1218 (citation omitted).

Thus, *Evans* and *Maxwell* teach that "where Congress has attempted to regulate (or eliminate) an interstate market," it has "substantial leeway to regulate purely intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity." *Id.* at 1215.

These decisions are consistent with the understanding of the commerce power, as recently articulated by the Supreme Court in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012). While, in that case, the Court found Congress's attempt to require everyone to buy health insurance exceeded its power under the commerce clause, the decision reaffirmed that "'[t]he power of Congress over interstate commerce is not confined to the regulation of commerce among the states,' but extends to activities that 'have a substantial effect on interstate commerce,'" and, "moreover, is not limited to regulation of an activity that by itself substantially affects interstate commerce, but also extends to activities that do so only when aggregated with similar activities of others." *Id.* at 2585-86 (citations omitted).

As particularly relevant here, the Court drew on *Wickard v. Filburn*, 317 U.S. 111 (1942), the storied "wheat case" from the New Deal era, which upheld a federal penalty on a farmer growing wheat solely for home consumption. There, in rejecting the argument that the regulation exceeded the reach of the commerce power, the Court found that "the farmer's decision to grow wheat for his own use allowed him to avoid purchasing wheat in the market," which "when considered in the aggregate along with similar decisions of others, would have had a substantial effect on the interstate market for wheat." *See Nat'l Fed'n*, 132 S. Ct. at 2587-88 (discussing the decision in *Wickard*).

The problem in *National Federation*, however, was that Congress had attempted to rely on the commerce power "to compel individuals not engaged in commerce to purchase an unwanted product," as opposed to regulating actual economic activity. *See id.* at 2586. As Chief Justice Roberts, writing for the Court, explained:

> Construing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority. Every day individuals do not do an infinite number of things. In some cases they decide not to do something; in others they simply fail to do it. Allowing Congress to justify federal regulation by pointing to the effect of inaction on commerce would bring countless decisions an individual could potentially make within the scope of federal regulation, and – under the Government's theory – empower Congress to make those decisions for him. . . . The Framers gave Congress the power to *regulate* commerce, not to *compel* it, and for over 200 years both our decisions and Congress's actions have reflected this understanding. There is no reason to depart from that understanding now.

*Id.* at 2587 (emphasis original). The Court contrasted the health care regulation with the federal penalty on homegrown wheat in *Wickard*, noting that "[t]he farmer in *Wickard* was at least actively engaged in the production of wheat, and the Government could regulate that activity because of its effect on commerce," whereas accepting the health care law "would effectively override that limitation, by establishing that individuals may be regulated under the Commerce Clause whenever enough of them are not doing something the Government would have them do." *See id.* at 2588.

That is not at all the situation here. This case, more like the wheat case, involves a Defendant engaged in affirmative economic activity that, when aggregated, substantially affects interstate commerce. Congress, in passing section 1591(a), sought to eliminate a pernicious commercial activity – the prostitution of minors – rather than "forc[ing] individuals into commerce precisely because they elected to refrain from commercial activity." *See id.* at 2591.

In view of this case authority, the Defendant's arguments are easily disposed of. Section 1591(a) is part of a comprehensive scheme designed to eliminate child sex trafficking. "Congress recognized that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery, and it is the largest manifestation of slavery today.'" *Evans*, 476 F.3d at 1179. In addition, "Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce," a conclusion that this Court cannot say is irrational. *Id.* Here, "[Defendant's] enticement of [young girls] to commit prostitution, even though his actions occurred solely in Florida, had the capacity when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity." *Id.* As the district court in *Evans* noted, "[w]hile the Defendant's activities may be minor in the national and international market of

trafficking children for commercial sex acts, his acts contribute to the market that Congress'[s] comprehensive scheme seeks to stop." *See United States v. Evans*, Case No. 05-cr-20444 (S.D. Fla. Nov. 23, 2005) (Seitz, J.) (ECF No. 141). To find that the statute may not reach purely intrastate conduct, such as that involved here, would render impotent Congress's attempt to entirely stamp out sex trafficking of young girls and women. *See id.* ("Failure to address local activities could have a pernicious effect on the overall effectiveness of the scheme."). As such, "Defendant's acts cannot be excised from the scope of the statute." *Id.* Therefore, for these reasons, Defendant's interstate commerce argument is without merit.[4]

### Conclusion

For the reasons expressed herein, the Court finds that the Indictment should not be dismissed in this case. Accordingly, it is hereby **ORDERED and ADJUDGED** that the Defendant's Motion to Dismiss Indictment [ECF No. 43] is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida on August 7, 2012.

**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of Record

---

[4] Although case-specific evidence of interstate activity is not required to sustain the Indictment, the Court notes there may well be a real nexus to interstate commerce here. For example, the Defendant used his cell phone in furtherance of his child prostitution venture, and likely used, or caused to be used, condoms that travelled interstate. As the Government explains, "[t]he use of condoms is obviously integral to prostitution endeavors, regardless of whether those condoms are supplied by the pimp, a wary customer, or the prostitute herself." Resp. at 18. The Court also agrees with the Government's suggestion that the spreading of sexually transmitted diseases is "an entirely predictable consequence of prostitution, necessitating the use of medical supplies that will often have to be transported from out of state." *Id.* Further, because South Florida's population is transient, Defendant's criminal acts were undoubtedly beyond parochial, reaching individuals who had travelled here from out of state. *See Evans*, Case No. 05-cr-20444 (ECF No. 141) ("in Miami-Dade County, a tourist and international business destination, [defendant's client] could be a local resident or someone traveling through depending on the daily flow of the business"). Taken in the aggregate, these facts would be sufficient to demonstrate that Defendant's activities were interstate in character. *See Evans*, 476 F.3d at 1179-80 (defendant's use of cell phones, hotel rooms, and condoms in sex trafficking venture had aggregate economic impact on interstate commerce).